UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------x

ANDREW CHIEN:                                    NO. 3:09cv1873(CSH)

        Pro Se Plaintiff

-against-
                                                 JURY TRIAL DEMANDED

BARRON CAPITAL ADVISORS LLC
SKYPEOPLE FRUIT JUICE INCORPORATION

        Defendants                       June 6, 2011

----------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT:AND FOR JOINDER OF ADDITIONAL DEFENDANTS: FURTHER TO REMAND THIS CASE TO STATE COURT

      Plaintiff Andrew Chien submits this Memorandum of Law to support his "MOTION FOR LEAVE TO AMEND COMPLAINT:AND FOR JOINDER OF ADDITIONAL DEFENDANTS: FURTHER TO REMAND THIS CASE TO STATE COURT", pursuant to Federal Rule Civil Procedure 15(a)(2),15(d), 20(a)(2) and US Code Title 28 1441(c).

      The reasons why Plaintiff moves this honorable Court for granting his leave to amend and to add two defendants Barron Partnership LP and Mr. YongKe Xue CEO of Skypeople, and further to remand this case to Connecticut Superior Court, are on the followings:

      1. On April 15, 2011 Skypeople filed an amendment for the annual report of 2009 to admit "that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2009 and that the Company's disclosure controls and procedures over financial reporting were not effective as of December 31, 2009"( Attachment 1, page 10 of 10-k/A ). Then Skypeople disclosed hidden

critical information, which was concealed to investors at least for over one and half a year, and caused shareholder class action being filed.

2. One information is when Defendant Skypeople acquired Yingkou Trusty Fruits Co., Ltd ("Yingkou") for a purchase price of $3,325,569 on November 25, 2009, it didn't make disclosure that 46% of Yingkou was owned by Mr. YongKe Xue, CEO and other Director of Skypeople(China) (original name: Tianren). When the market learned that the acquisition was from the CEO and a director, the company's stock price dropped over 50% recently. The Rosen Law Firm and Federman & Sherwood filed shareholder class action separately. A copy of the complaint of the Rosen Law Firm was listed as Attachment 2.

3. What's the relation of the shareholder class action with this lawsuit?

(a) As filed in Sur-reply dated January 11, 2010, the 2009's financing of Skypeople was that Barron Partners sold 6,500,000 shares to Skypeople at $2.55, then the underwriter sold these shares of Barron Partners to retail shareholders. The stock price jumped to $5.5 shortly and reached over $7 in early months of 2010, and Barron Partners made tremendous profits at the costs of other shareholders.

(b) The prospectus prepared by the law firm who hereby representing defendants, concealed this existing lawsuit not only, but also concealed one of the purposes of the proceeds for buying a company owned significantly by officers.

(c) The fraud and conspiracy in the violation of security laws have the same motivations of defendants' bad faith, greedy and unjust enrichment, as this case claimed here.

(d) The Defendants as selling shareholders to sell their shares nationally including Connecticut have business contact in Connecticut due to the Buyers remedy principle specified in Security Act 1933, Sec. 11(a) for issuers, officers, and Sec. 12(a) for the selling shareholders, buyers may sue at "any court of competent jurisdiction" as submitted in Sur-reply pp. 6. Therefore, the item alone approved that Defendants argument that they have no business contact in Connecticut is not true, further the Court should have personal jurisdiction over Defendants.

4. The 10k/A disclosed the Barron Partner's transaction with Skypeople( Attachment 1, pp. 12, third paragraph):

"The number of shares of series B convertible preferred stock which were issued to Barron Partners pursuant to the agreement was determined by dividing the aggregate indebtedness cancelled ($5,055,418) by $8.1822 per share (which was the rate at which one share of Common Stock was issuable for principal under the convertible promissory notes). In lieu of issuing Common Stock, the Company and Barron Partners agreed that Barron Partners would be issued series B convertible preferred stock (which upon consummation of a 1-for-328.72898 reverse stock split that was consummated on May 23, 2008 became convertible into Common Stock on a share for share basis)."

From the information we could get an estimation of how much unjust enrichment the Barron Partner got in this scam. Tianren (name changed to Skypeople(China) now)became USA public listing is through a reverse merger with a Barron Partner controlled "shell" company called Entech( the name changed to Skypeople after the reverse merger). We called it a "shell' company because it is a debt free and asset zero company.

3

That means Barron Partner should take its total debt of $5 million to zero, and made an invest loss of $5 million before Entech engaging in the reverse merger. The above disclosed information is that Barron Partner exchanged about $5 million debt with Entech's shares at $8.18 per share after the share performed a reverse split. That means Barron Partner exchanging for about 600,000 shares of Skypeople with market value worth around $ 1.5 to $4 million if counting on the stock price trading range in 2009 and early six month period of 2010. Assuming Barron Partner sold at the price of middle, it would get about $2.75 million. That means Barron Partner got $2.75 million recovery from it's originally about $5 million invest loss.  If  Barron Partner hadn't "stolen" Andrew Chien's contract, the invest loss of $5 million would get only about $300,000 cash recovery, which is the market price of a clean "shell" ( a public listing company of no operation, no any debt and any asset) in Wall Street currently.  From the recent disclosed information we can estimate that Barron Partner having gotten unjust enrichment about $2.45 million just for a shell switch in its tort action against Andrew Chien.

5. Barron Partner LP Met Five Standards in Allegation of <u>Tortious Interference</u> With Prospective Economic Advantage in Case Law.

> "The elements of that tort of are: '(1) an economic relationship between [the plaintiff and some third person] containing the probability of future economic benefit to the [plaintiff], (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, [and] (5) damages to the plaintiff proximately caused by the acts of the defendant.' (Buckaloo v. Johnson (1975) 14 Cal.3d 815, 827.)"

It is obvious that Barron Partner LP ("Barron") met the above-mentioned five standards in case-law: (1) Andrew Chien had signed the service contract for Skypeople (Tianren) public listing, and would get $250,000 cash and 2% of shares guaranteed on the full-diluted basis until February 2011; (2) That USChina contracted with Tianren for OTCBB listing was public news by News Release dated Sept. 8, 2006 and this News Release widely adapted by Investor Business Daily, Yahoo, CBS MarketWatch, Hoovers, and more than forty different websites (pp. 5 of Complaint). Barron definitely should know this news, or was intentional, reckless not knowing, or grossly negligent of this news; (3) Barron solicited Tianren to replace USChina for public listing service, fully for its own economy benefits; (4) Tianren no long contacted USChina for public listing services, after being solicited by Barron. (5) Barron's tortious interference caused Plaintiff lost payment of approximately $220,000 cash and 2% of Skypeople's stock.

6. Barron Partnership LP is a Connecticut citizen. The diversification of Rule 1331 is not applied. This case would remand to Connecticut Superior Court due to US Code Title 28 1441(c).

7. Mr. Xue is important as a defendant because he signed the service contact for public listing with Andrew Chien and he is the control person for both Skypeople and Skypeople(China). He made the decision that majority of the contract's reward should be paid by Skypeople in USA at 2% of its outstanding shares within three years.

5

8. Plaintiff has the standing to sue Defendants. Andrew Chien privately fully owned the legal rights of this lawsuit. On Page 3 of the Plaintiff's complaint, it recorded:

"On July 1, 2008, Plaintiff got fully assignment from USChina Channel LLC of the rights "to pursuit any proper means including legal actions to fully collect any benefits associated from this contract from any parties."

A full copy of the Assignment Agreement was attached in the amended complaint of another case 3:08cv1154. The Agreement clearly stated that "Andrew Chien personally" owned "the all legal rights involved in this contract" between USChina and Tianren. This transfer is legal by following Chapter 613, Connecticut Act of Limited Liability Companies:

Sec. 34-168. Transfer of property

(a)... property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any member in the name of the limited liability company.

Chapter 613 also detailed the following LLC operating agreement:

Sec. 34-140. Management (c)...If the limited liability company has only one member, the operating agreement may be adopted by such member and the limited liability company or may be a statement adopted by such member.

Therefore, in this lawsuit, Andrew Chien represents himself, not USChina Channel LLC. In order to further clear this issue, Andrew

Chien, representing both himself and USChina Channel LLC, made the following statement as shown in Sur-reply pp.5:

"On July 1, 2008, USChina Channel assigned all legal rights involved in the contract to Andrew Chien personally. This assignment should be considered as a sale and purchase transaction: Andrew Chien, through his personal service to USChina Channel LLC, privately purchased all rights of the contract. Andrew Chien personally bears all benefits and liability from the contract he owned."

Defendants didn't show any law or authorities, which prohibits the individual from pursuing lawsuits on the transferred, or purchased legal rights. Since the announcement of the property transfer happened when last case 3:08cv1154 was going on, _Honorable Judge Charlies S. Haight, Jr., became the only authority capable to make decision on the property transfer due to FRCP 25(c), and he didn't object it_ in his October 2009's ruling for closing the case 3:08cv1154.

WHEREFORE, Plaintiff respectfully prays that the Court grant this Motion.

June 6, 2011                          Plaintiff


                                      ANDREW CHIEN
                                      665 Ellsworth Avenue
                                      New Haven, CT06511
                                      (203)562-8899

Attachments: 1.Skypeople's SEC filing on April 15, 2011(page 7-13).

              2. Complaint of Class Action by Rosen Law Firm, P.A.

**Attachment 1**.

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K/A

**(Amendment No. 1)**

☑ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2009

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the Transition Period from ___ to ___

Commission File Number 1-14523

## SKYPEOPLE FRUIT JUICE, INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Florida** | **98-0222013** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification Number) |
| **16F, National Development Bank Tower, No. 2, Gaoxin 1st. Road, Xi'an, PRC** | **710075** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's Telephone Number: **011-86-29-88377161**

Securities registered pursuant to Section 12(b) of the Act: None

Securities registered pursuant to Section 12(g) of the Act: Common Stock, par value $.001 per share

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in rule 405 of the Securities Act.
☐Yes ☑ No

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.
☐Yes ☑ No

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   ☑ Yes ☐ No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy statement or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company.  See definition of "large accelerated filer" "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large Accelerated Filer | ☐ | Accelerated Filer | ☐ |
| Non-Accelerated Filer | ☐ | Smaller reporting company | ☑ |
| (Do not check if a smaller reporting company) | | | |

Indicate by check mark whether the registrant is a shell company (as defined in rule 12b-2 of the Exchange Act). ☐Yes  ☑No

The aggregate market value of voting stock held by non-affiliates of the registrant, based upon the closing price of $5.25 per share for shares of the registrant's Common Stock on June 30, 2009, the last business day of the registrant's most recently completed second fiscal quarter as reported by the OTC Bulletin Board, was approximately $17.2 million. In calculating such aggregate market value, shares of Common Stock held by each officer, director and holder of 5% or more of the outstanding Common Stock (including outstanding shares with respect to which a holder has the right to acquire beneficial ownership within 60 days) were excluded because such persons may be deemed to be affiliates. This determination of affiliate status is not necessarily a conclusive determination for other purposes.

The number of shares of Common Stock outstanding as of March 25, 2010 was 19,768,901.

## EXPLANATORY NOTE

This Amendment No. 1 ("Amendment") on Form 10-K/A amends the Annual Report of SkyPeople Fruit Juice, Inc. (the "Company") on Form 10-K for the year ended December 31, 2009, as filed with the Securities and Exchange Commission, or the Commission, on March 31, 2010 (the "Original Filing"). This Amendment is being filed for the purposes of adding information to "Item 13- Certain Relationships and related transaction, and director independence" and updating "Item 9A(T) Controls and Procedures" in connection with the foregoing amendment to Item 13 of the Original Filing.   The information added to this Amendment was previously disclosed in the Company's Annual Report on Form 10-K for the year ended December 31, 2009 (by incorporating by reference to the Information Statement on Schedule 14A filed with the Commission on April 30, 2009) with respect to related party transactions occurred during fiscal year 2008, and in the Company's Annual Report on Form 10-K for the year ended December 31, 2010 with respect to related party transactions occurred during fiscal year 2009. This Amendment is an amendment and restatement of Item 9A(T) and Item 13 of the Original Report in their entirety in order to provide a complete presentation. Except as stated herein, this Amendment does not reflect events occurring after the date of the filing of the Original Report.

## ITEM 9A – CONTROLS AND PROCEDURES

*Evaluation of Disclosure Controls and Procedures*

Our management, with the participation of our CEO and CFO, previously evaluated the effectiveness of the Company's disclosure controls and procedures, as defined in Rule 13a-15(e) and 15d-15(e) of the Exchange Act, as of December 31, 2009, in connection with the preparation and filing of our Annual Report on Form 10-K for the year ended December 31, 2009, or the 2009 Form 10-K.

The term "disclosure controls and procedures" as defined in Rules 13a-15(e) and 15d-15(e) means controls and other procedures of the Company that are designed to ensure that information required to be disclosed by a company in reports, such as this report, that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the company's management, including its principal executive

and principal financial officers, as appropriate to allow timely decisions regarding required disclosure. Management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives, and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

Based on that evaluation, our chief executive officer and chief financial officer previously concluded that our disclosure controls and procedures were effective (i) to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Commission's rules and forms and (ii) to ensure that information required to be disclosed by us in the reports that we submit under the Exchange Act is accumulated and communicated to our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate, to allow timely decisions regarding required disclosure.

Subsequently, in connection with our management's evaluation of the effectiveness of the Company's disclosure controls and procedures as of December 31, 2010, management determined that the acquisition of Yingkou that was consummated in November 25, 2009 was a related party transaction that should have been subject to our policies and procedures governing related party transactions (Statement of Policies and Procedures with Respect to Related Party Transactions). Even though the ultimate purchase price of Yingkou paid by us was lower than the valuation appraised by a qualified third party, thus favorable to us, and there was no affiliation between the relevant directors and officers of the Company and the seller of Yingkou at the time Yingkou Acquisition was initially approved by the shareholders of SkyPeople (China) and the affiliation between the relevant directors and officers and the seller of Yingkou came into existence while the transaction was being delayed and such affiliation ended prior to the consummation of the acquisition, management determined that the failure to disclose the relevant affiliation while the transaction was pending was a material weakness in our disclosure controls and procedures. *See Item 13, Certain Relationships and Related* Tra*nsactions, and Director Independence for additional information regarding the acquisition of Yingkou.*

Based of the lack of disclosure related to the acquisition of Yingkou as a related party transaction in the 2009 Form 10-K, our CEO and CFO retroactively concluded that our disclosure controls and procedures were not effective as of December 31, 2009.

*Management's Report on Internal Controls Over Financial Reporting*

Our management is responsible for establishing and maintaining adequate internal control over financial reporting. Our internal control over financial reporting is designed to provide reasonable assurances regarding the reliability of financial reporting and the preparation of our consolidated financial statements in accordance with U.S. GAAP. Our accounting policies and internal controls over financial reporting, established and maintained by management, are under the general oversight of the Board's audit committee.

Our internal control over financial reporting includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of our assets;

- provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP, and that receipts and expenditures are being made only in accordance with authorizations of our management and directors; and

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree or compliance with the policies or procedures may deteriorate.

Management assessed our internal control over financial reporting as of December 31, 2009. The standard measures adopted by management in making its evaluation are the measures in the Internal-Control Integrated Framework published by the Committee of Sponsoring Organizations of the Treadway Commission. Based upon its assessment, management previously

concluded that our internal control over financial reporting was effective at December 31, 2009, and that there were no material weaknesses in our internal control over financial reporting as of that date.

Subsequently, in connection with our management's evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2010, management determined that the acquisition of Yingkou was a related party transaction that should have been subject to our policies and procedures governing related party transactions (Statement of Policies and Procedures with Respect to Related Party Transactions). Because the lack of disclosure of the Yingkou acquisition as a related party transaction to the Board and in the Company's 2009 Form 10-K according to its Statement of Policies and Procedures with Respect to Related Party Transactions policy and the related SEC rules may be considered a material weakness in the efficiency and effectiveness of the Company's procedures with respect to the conduct of its operations and the Company's compliance with laws and regulations, management concluded retroactively that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2009 and that the Company's disclosure controls and procedures over financial reporting were not effective as of December 31, 2009.

*Changes to Internal Control over Financial Reporting*

There were no changes in the Company's internal control over financial reporting during the fourth quarter of 2009 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

## ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS, AND DIRECTOR INDEPENDENCE

*The following describes the related party transactions occurred during fiscal year 2008*

### *Transactions Involving Hede Investment Management Co., Ltd., or Hede*

In January 2008, our subsidiary, SkyPeople Juice Group Co., Ltd., or SkyPeople (China) (formerly known as Shaanxi Tianren Organic Food Co., Ltd.), made rental payment in the amount of RMB 11,038 (approximately $1,618 based on the exchange rate as of December 31, 2008) to the landlord of Hede on behalf of Hede, a PRC company owned by Yongke Xue, the chairman of our board of directors and our chief executive officer, and Xiaoqin Yan, a director of our board of directors.

In February 2008, we purchased Pacific Industry Holding Group Co., Ltd., which is the holding company for our operating subsidiary, SkyPeople (China). At the time, Hede, was indebted to SkyPeople (China) on account of previous loans and advances made by SkyPeople (China) to Hede. Such loans and advances totaled RMB 31,544,043 in the aggregate (or $4,318,281 based on the exchange rate as of December 31, 2007) and were made during the period from June 6, 2007 to December 29, 2007 that were used by Hede to pay a portion of the purchase price for Hede's acquisition of Huludao Wonder Fruit Co., Ltd., or Huludao Wonder. In May 2008, SkyPeople (China) also assumed Hede's obligation of RMB 18,000,000 (or $2,638,329 based on the exchange rate December 31, 2008) for the balance of the purchase price for Huludao Wonder.

In May 2008, SkyPeople (China) made a rental payment to Hede in the aggregate amount of RMB 1,500,000 (approximately $219,861 based on the exchange rate as of December 31, 2008) to lease, for the period from January to May 2008, all of the assets and facilities of Huludao Wonder Fruit Co., Ltd., or Huludao Wonder. In the same month, Shaanxi Tianren assumed Hede's obligation of RMB 18,000,000 (approximately $2,638,329 based on the exchange rate of December 31, 2008) for the balance of the purchase price for Huludao Wonder under an agreement pursuant to which Hede purchased Huludao Wonder.

On June 10, 2008, Hede sold Huludao Wonder to SkyPeople (China) for a total price of RMB 48,250,000 (or $6,308,591 based on the exchange rate on June 1, 2007) the same price which Hede paid for Huludao Wonder. As of May 31, 2008, SkyPeople (China) had a related party receivable of RMB 48,929,272 (or $7,171,751 based on the exchange rate December 31, 2008) from Hede, which was credited against the purchase price, so that SkyPeople (China) did not pay any cash to Hede for the purchase, and the remaining balance of the loans and advances of RMB 679,272 (or $99,564 based on the exchange rate as of December 31, 2008) to Hede was repaid to us on June 11, 2008. No interest or other consideration was paid by Hede to us on account of the time value of money with respect to the loans and advances made by SkyPeople (China) to Hede.

### *Transactions involving Barron Partners, L.P., or Barron Partners*

On February 26, 2008, pursuant to an oral agreement between the Company and Barron Partners, the Company issued an aggregate of 615,147 shares of series B convertible preferred stock to Barron Partners in exchange for the cancellation of (a)

all indebtedness of the Company to Barron Partners under certain outstanding convertible promissory notes issued to Barron Partners during the period from September 30, 2004 to February 2008 to evidence working capital loans made by Barron Partners to the Company and (b) all liquidated damages payable to Barron Partners (including all amounts as well as any amounts which would become payable in the future as a result of continuing failures) as a result of the failure of the Company to have registered under the Securities Act of 1933, as amended, for resale by Barron Partners the common stock of the Company issuable upon conversion of such convertible promissory notes under various registration rights agreements between the Company and Barron Partners entered into in connection with the foregoing loans. The oral agreement was approved by the written consent of the then sole director of the Company in February 2008.

The total amount of principal and accrued interest under all convertible promissory notes, which were cancelled, aggregated approximately $1,735,286 and the total amount of accrued liquidated damages, which were cancelled, aggregated approximately $3,320,132. All of the convertible promissory notes bore interest at the rate of 8% per annum and were convertible into shares of Common Stock at a conversion rate of one share of Common Stock for every $8.21822 of principal converted. The registration rights agreements provided for liquidated damages to accrue at the rate of 36% per annum of the note principal in the event that the registration statements to register the underlying shares were not declared effective by the required deadline.

The number of shares of series B convertible preferred stock which were issued to Barron Partners pursuant to the agreement was determined by dividing the aggregate indebtedness cancelled ($5,055,418) by $8.1822 per share (which was the rate at which one share of Common Stock was issuable for principal under the convertible promissory notes). In lieu of issuing Common Stock, the Company and Barron Partners agreed that Barron Partners would be issued series B convertible preferred stock (which upon consummation of a 1-for-328.72898 reverse stock split that was consummated on May 23, 2008 became convertible into Common Stock on a share for share basis).

On February 4, 2008, the Board of Directors of Shaanxi Qiyiwangguo Modern Organic Agriculture Co., Ltd., ("Shaanxi Qiyiwangguo"), declared a cash dividend of $2,899,855 to its former shareholders. Since SkyPeople (China) held a 91.15% interest in Shaanxi Qiyiwangguo, $2,643,218 was paid to SkyPeople (China) and $256,637 was paid to its minority interest holders. On the same date, the Board of Directors of SkyPeople (China) declared a cash dividend of $4,966,280 to its shareholders. Pacific Industry Holding Group, Inc., or Pacific, a Vanuatu corporation which is a wholly owned subsidiary of the Company, holds a 99% interest in SkyPeople (China). Therefore, $4,916,617 was paid to Pacific and $49,663 was paid to SkyPeople (China)'s minority interest holders. The inter-company dividend was eliminated in the consolidated statement. The dividend paid to minority interest holders was $306,300.

In May 2008, Pacific erroneously paid $4,916,617 to its former shareholders as the result of a dividend declaration in February 2008. The monies were then returned to the Company, without interest, in June 2008. Because the recipients of the money were directors of the Company and the erroneous dividend payment has been treated as a loan for accounting purposes, the Company may have inadvertently violated Section 13(k) of the Exchange Act in connection with such erroneous dividend payment.

*The following describes the related party transactions occurred during fiscal year 2009*

*Acquisition of Yingkou Trusty Fruits Co., Ltd., or Yingkou*

On November 25, 2009, we acquired Yingkou for a purchase price of RMB 22,700,000 (or approximately $3,325,569 based on the exchange rate of December 31, 2009), pursuant to the Stock Purchase Agreement that SkyPeople (China) entered into with Shaanxi Boai Pharmaceutical & Scientific Development Co., Ltd. ( formerly known as "Xi'an Dehao Investment & Consultation Co., Ltd."), or Shaanxi Boai, on November 18, 2009 . The acquisition of Yingkou was originally contemplated in connection with the Company's private financing in 2008 pursuant to the Series B Convertible Preferred Stock Purchase Agreement, dated February 25, 2008, by and between the Company and certain accredited investors, or the Series B Purchase Agreement. The Series B Purchase Agreement required that, when it became legally and financially feasible, the Company make arrangements, including acquisition arrangements, with Yingkou so that after giving effect to such arrangements, the financials of Yingkou would be consolidated into the Company's financials in accordance with the principles of the generally accepted accounting principles of the US GAAP.

Previously on May 25, 2008, the shareholders of SkyPeople (China) approved, in principle without dictating specific terms, for SkyPeople (China) to acquire Yingkou from Shaanxi Boai. Thereafter, the proposed acquisition was delayed by the worldwide economic recession that impacted our business operations and growth strategies. The acquisition of Yingkou in November 2009 at the final purchase price of RMB 22.7 was based on the asset valuation report dated June 25, 2008 provided by Shaanxi

Zhongqing Limited Liability Accounting Firm, an asset valuation firm certified by the PRC Ministry of Finance. Prior to the acquisition of Yingkou from Shaanxi Boai, our CEO, Yongke Xue, served as a director of Shaanxi Boai from August 30, 2009 to November 10, 2009. In addition, prior to the acquisition of Shaanxi Boai, between January 6, 2009 and November 10, 2009, 46% of Shaanxi Boai was held by Shaanxi Future Adventure Investment & Management Co., Ltd., or Shaanxi Future, pursuant to a trust agreement between Shaanxi Future and an unrelated individual who is Shaanxi Boai's current sole shareholder. Shaanxi Future is a company organized under the laws of the PRC, which has been 80% and 20% owned by Mr. Xue and Ms. Xiaoqin Yan, a director of both SkyPeople and SkyPeople (China), respectively. See Item 9A, Controls and Procedures for additional information related to the acquisition of Yingkou.

## Director Independence

As of December 31, 2009, we had five directors. Three of our current directors, Messrs. Guolin Wang, Norman Ko and Robert B. Fields, were "independent directors" as defined under the rules of the NASDAQ Global Market, constituting a majority of independent directors of the Board as required by the rules of the NASDAQ Global Market. On June 28, 2010, Mr. John Smagula was elected to our board of directors at our annual shareholder meeting to replace Mr. Fields as an independent director in connection with Mr. Fields' retirement from the board.

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

SkyPeople Fruit Juice, Inc.

/s/ Yongke Xue

By: Yongke Xue
Chief Executive Officer and Director
(principal executive officer)

Pursuant to the requirement of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the Registrant and in the capacity and on the dates indicated.

| Name and Title | Date |
| --- | --- |
| /s/ Yongke Xue | April 15, 2010 |
| Yongke Xue | |
| Chief Executive Officer and Director | |
| (principal executive officer) | |
| /s/ Spring Liu | April 15, 2010 |
| Spring Liu | |
| Chief Financial Officer | |
| (principal financial officer and accounting officer) | April 15, 2010 |
| /s/ Xiaoqing Yan | |
| Xaioqing Yan, Director | April 15, 2010 |
| /s/ Guolin Wang | |
| Guolin Wang, Director | April 15, 2010 |
| /s/ John Smagula | |
| John Smagula, Director | April 15, 2010 |
| /s/ Norman Ko | |
| Norman Ko, Director | April 15, 2010 |

13

<u>     ATTACHMENT   2.</u>

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne (JH 7258)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL KUBALA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                  Plaintiff,<br>        vs.<br><br>SKYPEOPLE FRUIT JUICE, INC.,  RODMAN & RENSHAW, LLC, YONGKE XUE, AND XIAOQIN YANG,<br><br>            Defendants. | CASE No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Paul Kubala, on behalf of his minor child N. K. and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against SkyPeople Fruit Juice, Inc., ("SkyPeople", or the "Company"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendant's public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission

1

("SEC") filings, wire and press releases published by and regarding SkyPeople securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased common stock of SkyPeople during the period between March 31, 2010 and April 1, 2011, inclusively. Plaintiff seeks to recover damages caused by Defendants' violations of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Throughout the Class Period, the Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that a major acquisition it had made in 2009 was from the Company's CEO and one of the Company's directors.

3.      When the market learned that the acquisition was from the CEO and a director, the Company's stock price plunged, damaging investors.

## JURISDICTION AND VENUE

4.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

5.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

15

6.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

7.    In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the NASDAQ.

## PARTIES

8.    Plaintiff Paul Kubala, as set forth in the attached PSLRA certification, purchased SkyPeople securities for his minor child N. K. at artificially inflated prices during the Class Period and has been damaged thereby.

9.    Defendant SkyPeople is a Florida Corporation with its principal executive offices located at 16F National Development Bank Tower No. 2, Gaoxin 1st Rd., Xi'an, People's Republic of China. SkyPeople produces, markets, and sells fruit juice and fruit juice concentrate.

10.    Defendant Yongke Xue ("Xue") was, at all relevant times, Chief Executive Officer and a Director of SkyPeople.

11.    Defendant Xiaoqin Yang ("Yang") was, at all relevant times, a Director of SkyPeople.

12.    Collectively, Defendants Xue and Yang are the "Individual Defendants".

13.    Collectively, SkyPeople and the Individual Defendants are the "SkyPeople Defendants".

14.    Defendant Rodman & Renshaw, LLC ("Rodman & Renshaw") was underwriter for a Secondary Offering of SkyPeople stock with a Prospectus dated August 26, 2010.

3                                                                16

15.    During the Class Period, the Individual Defendants and SkyPeople and its subsidiaries and affiliates, were privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections. Because of possession of such information, the Defendants knew or recklessly disregarded the fact that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

16.    Defendants had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents and via reports and other information provided in connection therewith.

17.    Throughout the Class Period, the Defendants were able to control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  The Defendants had access to the documentation of filings alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected.  Accordingly, the Defendants are responsible for the accuracy of the public reports and press releases detailed herein, and are therefore primarily liable for the representations contained therein.

## ALLEGATIONS OF FRAUD

18.    The Class Period begins on March 31, 2010, when SkyPeople filed its annual report for the year ending December 31, 2010, on Form 10-K.

19.    Under the header Risk Factors, the Company included a section titled "*[w]e may have inadvertently violated Section 402 of the Sarbanes-Oxley and Section 13(k) of the Exchange Act and may be subject to sanctions for such violations*" that disclosed a related

party transaction.

20.     The Company disclosed no other related party transactions.

21.     In 2009, the Company had purchased Yingkou Trusty Fruits, Co., Ltd. ("Yingkou"). The Company paid 22.7 Million Renmibi for Yingkou.

22.     The Company's CEO and Defendant Yang (a director of SkyPeople) owned an entity called Shaanxi Future Adventure Investment & Management Co., Ltd. ("Shaanxi Future"). The Company's CEO owned 80% of Shaanxi Future, and Defendant Yang owned 20%.

23.     Shaanxi Future owned 46% of Yingkou.

24.     The Yingkou transaction was therefore an undisclosed related party transaction.

25.     Statement of Financial Accounting Standards ("SFAS") No. 57 and No. 850 provide that a public company's "[f]inancial statements shall include disclosures of material related party transactions." SFAS No. 57 ¶ 2; 850-10-50-1. "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates." SFAS No. 57 ¶ 1; 850-10-05-3. "Affiliate" includes any company that is under common control or management with the public company. SFAS No. 57 ¶ 24(a, b); 850-10-20.

26.     The 2009 10-K was therefore not in compliance with GAAP.

27.     Financial Statements not in compliance with GAAP are presumed to be misleading. SEC Regulation S-X, 17 C.F.R. § 210.4-01. Therefore, the Company's 2009 10-K was misleading.

28.     In the Yingkou transaction, defendants violated GAAP through a related-party transaction concealed behind a shell company.

29.     The related party transaction benefited the Company's CEO and Defendant Yang

5

at the expense of shareholders.

30.     The related party transaction therefore supports a strong inference of scienter.

31.     On August 26, 2010, the Company issued a Prospectus for the sale of certain of
its shares (the "Offering").

32.     The Underwriter for the Offering was Defendant Rodman & Renshaw.

33.     The Prospectus stated that "there has not been a reportable transaction between us
and a related party since January 1, 2009."

34.     This statement was false. The Yingkou transaction was a reportable transaction
between the Company and a related party. Therefore, the Prospectus was misleading. SEC
Regulation S-X, 17 C.F.R. § 210.4-01.

35.     On April 1, 2011, the Company issued its annual report for the year ending
December 31, 2010, on Form 10-K.

36.     The Company disclosed that the Yingkou transaction was a related party
transaction as set out above.

37.     On April 1, 2011, analyst firm Roth Capital Partners cut its price target on the
Company from $13 per share to $4 per share, citing concerns about related party transactions.

38.     The Company's stock closed at $4.41 per share on March 31, 2011. On April 1, it
closed at $3.85 per share. On April 4 (the next trading day), it closed at $3.57 per share.

39.     This stock drop damaged investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil
Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased

6

common stock of SkyPeople stock during the Class Period and who were damaged thereby. Excluded from the Class are the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by SkyPeople or its transfer agent, and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> (a) whether the federal securities laws were violated by Defendants acts as alleged herein;

7

20

(b)  whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of SkyPeople; and

(c)  to what extent the members of the Class have sustained damages, and the proper measure of damages.

45.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**Applicability of Presumption of Reliance:**
**<u>Fraud-on-the-Market Doctrine</u>**

46.  At all relevant times, the market for SkyPeople common stock was an efficient market for the following reasons, among others:

(a)  The Company's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)  As a regulated issuer, SkyPeople filed periodic public reports with the SEC and the NASDAQ;

(c)  SkyPeople regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major

8

newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d) SkyPeople was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

47. As a result of the foregoing, the market for the Company's common stock promptly digested current information regarding SkyPeople from all publicly available sources and reflected such information in SkyPeople's stock price. Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of SkyPeople's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many or all of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each

9                                                                                          22

of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase SkyPeople's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SkyPeople's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

52.     Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of

10                                                    23

conduct to conceal adverse material information about the business, operations and future prospects of SkyPeople as specified herein.

39.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SkyPeople's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SkyPeople and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of SkyPeople's securities during the Class Period.

40.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available.  Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SkyPeople's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by overstatements and misstatements of the Company's financial condition throughout the Class Period, if the Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

11

41.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SkyPeople's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of SkyPeople's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by the Defendants during the Class Period, Plaintiff and the other members of the Class acquired SkyPeople common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

42.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SkyPeople's financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SkyPeople securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

43.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of SkyPeople's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

12

25

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Second Claim is asserted against each of the Individual Defendants.

46.     The Individual Defendants acted as controlling persons of SkyPeople within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

47.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

48.     As set forth above, SkyPeople and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

49.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

50.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 20, 2011                         Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne, Esq. (JH7258)
275 Madison Avenue, 34th Floor
New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

14                                                                                          27

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW CHIEN: | NO.  3:09cv1873(CSH) |
| Pro Se Plaintiff | |
| -against- | JURY TRIAL DEMANDED |
| BARRON CAPITAL ADVISORS LLC SKYPEOPLE FRUIT JUICE INCORPORATION | |
| Defendants | June 7, 2011 |

### CERTIFICATION OF SERVICES

I hereby certify that on January 7, 2011, a copy of the forgoing was filed personally at the clerk office of the Court Office. I further certify that a copy of the forgoing was sent, through alm@lopal.com & gpvidler@golawintl.com by e-mail to

Alison L. McKay
Law Offices of Paul A. Lange, LLC
80 Ferry Boulevard
Stratford, CT 06615-6079

Gregory P. Vidler

600 Madison Avenue, 14th Floor
New York, New York 10022

PLAINTIFF

ANDREW CHIEN

665 Ellsworth Avenue
New Haven, CT06511
(203)562-8899